## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **EMILY MILBURN, Individually and as** | § | |
| **Next friend of DYMOND LARAE** | § | |
| **MILBURN** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 08-193** |
| | § | |
| **SERGEANT GILBERT GOMEZ (BADGE** | § | **JURY DEMAND** |
| **#987), OFFICERS DAVID ROARK** | § | |
| **(BADGE #332), JUSTIN POPOVICH** | § | |
| **(BADGE #336), and SEAN STEWART** | § | |
| **(BADGE #392)** | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THIS HONORABLE UNITED STATES DISTRICT COURT:

The Defendants come now in support of summary judgment and will respectfully show:

## NATURE AND STAGE OF THE PROCEEDING

1.    At the initial scheduling conference, the Court instructed the Parties to mediate this case as early in the litigation as the Parties felt mediation could effectively be done. The Parties, therefore, participated in mediation on May 20, 2009 but did not resolve the case. The Parties have subsequently conducted discovery in accordance with the Court's Scheduling Order and discovery closed on August 28, 2009. In furtherance of the Court's instruction, the Parties again recently conferred, after completion of discovery, directly and through a mediator regarding the potential for settling the case but have still failed to resolve the case and the mediator declared impasse on September 10, 2009. Therefore, in accordance with the Scheduling Order, the Defendants submit their dispositive motion within 30 days after the mediator declared impasse.

## ISSUES TO BE RULED UPON BY THE COURT

2.     The Court is asked to determine whether there is evidence upon which a jury could reasonably find that: (1) Emily Milburn has standing to assert any claims in her individual capacity; (2) Dymond Milburn was subjected to a constitutional deprivation; and, if so, (3) if Plaintiffs can prove that any Defendant's conduct was objectively unreasonable under the totality of the circumstances confronting him as judged from the perspective of a reasonable police officer on the scene, not aided by the benefit of 20/20 hindsight.[1]   Because there is no such evidence and, instead, the evidence supports judgment as a matter of law in favor of all Defendants on all three points, Defendants move for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

3.     "The burden is on a plaintiff to overcome a defendant's defense of qualified immunity**."** *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994) (emphasis added). "The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; [] precedent places that burden upon plaintiffs." *Salas v. Carpenter*, 980 F.2d 299, 304-06 (5th Cir. 1992).  "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity.  It is sufficient that the Movant in good faith pleads that it is entitled to absolute or qualified immunity." *Beck v. Texas State Board of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000).  A reviewing court must not ignore uncontroverted proof on material issues simply because there are differing versions of immaterial facts. *See, e.g., Gibson v. Rich*, 44 F.3d 276, 277-78 n.7 (5th Cir. 1995); *Fraire*, 957 F.2d at 1273.

---

[1]     If the Plaintiffs fail to shoulder their burden of proof on either of these separate issues, the Defendants' are entitled to summary judgment based upon the presumption of their immunity.  See *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 (5th Cir. 2009).

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING..........................................................i

ISSUES TO BE RULED UPON BY THE COURT.......................................................ii

SUMMARY JUDGMENT STANDARD .....................................................................ii

TABLE OF CONTENTS..............................................................................................iii

TABLE OF AUTHORITIES ..........................................................................................v

ARGUMENT AND AUTHORITIES.............................................................................1

      EMILY MILBURN LACKS STANDING FOR INDIVIDUAL
      CAPACITY CLAIMS ............................................................................................1

      THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.........................2

      MILBURN WAS NOT DEPRIVED OF A CONSTITUTIONALLY
      PROTECTED RIGHT ...........................................................................................3

            *Officers Were Entitled to Temporarily Detain Milburn to Investigate
            Reasonable Suspicions* ............................................................................4

            *Probable Cause Existed to Arrest Milburn*...........................................8

            *Officers Authorized to Use Reasonable Force to Detain Milburn* .......11

            *The Defendants Were Permitted to Handcuff Milburn* .........................12

            *Force Allegedly Used Was Not Clearly Excessive to the Need* ............13

            *Force Plaintiff Claims Used Was Objectively Reasonable*...................14

            *Officers Did Not Deprive a Plaintiff of a Clearly Established Right* ...................15

            *Defendants' Actions Were Objectively Reasonable Under Established Law* ........18

      THE DEFENDANTS ARE ENTITLED TO OFFICIAL IMMUNITY FROM
      STATE LAW CLAIMS .........................................................................................19

CONCLUSION AND PRAYER ...................................................................................20

CERTIFICATE OF SERVICE .....................................................................................21

APPENDIX..................................................................................................................22

# TABLE OF AUTHORITIES

## Federal Cases

*Adams v. Williams,*
  407 U.S. 143, 145-46, 92 S. Ct. 1921, 1923 (1972) .................................................... 5

*Anderson v. Creighton,*
  483 U.S. 635, 640, 107 S. Ct. 3039 (1987).............................................. 16, 18, 19

*Atwater v. City of Lago Vista,*
  532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001)....................................................... 8

*Babb v. Dorman,*
  33 F3d 472, 477 (5th Cir. 1994) ...................................................................... 18

*Baker v. McCollan,*
  443 U.S. 137, 142, 99 S. Ct. 2689, 2693 (1979)....................................................... 3

*Ballard v. Burton,*
  444 F.3d 391, 402-03 (5th Cir. 2006) ................................................................ 12

*Beck v. Texas State Board of Dental Exam'rs,*
  204 F.3d 629, 633 (5th Cir. 2000) ..................................................................... ii

*Brinegar v. United States,*
  338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11 (1949) .............................................. 3

*Brown v. Lyford,*
  243 F.3d 185, 189 (5th Cir. 2001) ..................................................................... 3

*Burns-Toole v. Byrne,*
  11 F.3d 1270, 1274 (5th Cir. 1994) ................................................................... ii

*Coon v. Ledbetter,*
  780 F.2d 1158, 1160-61 ................................................................................ 1

*Crumley v. City of St. Paul,*
  324 F.3d 1003, 1007-08 (8th Cir. 2003) ............................................................ 12

*Dohaish v. Tooley,*
  670 F.2d 934, 936 (10th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60 (1982)...................... 1

*Dunaway v. New York,*
  442 U.S. 200, 208, 99 S. Ct. 2248 (1979)............................................................. 8

*Dunn v. Denk,*
  79 F.3d 401, 403 (5th Cir. 1996) .................................................................... 13

*Felton v. Polles,*
    315 F.3d 470, 477 (5th Cir. 2002) ........................................................ 15

*Fields v. City of South Houston,*
    922 F.2d 1183, 1189 (5th Cir. 1989) ................................................ 3, 4, 9

*Fraire v. City of Arlington,*
    957 F.2d 1268, 1270 (5th Cir. 1992) ...................................................... 11

*Freeman v. Gore,*
    483 F.3d 404, 417 (5th Cir. 2007) ........................................................ 13

*Gibson v. Rich,*
    44 F.3d 276, 277-78 n.7 (5th Cir. 1995) ................................................... ii

*Glenn v. City of Tyler,*
    242 F.3d 307, 312 (5th Cir. 2001) ..................................................... 2, 13

*Graham v. Connor,*
    490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989) ............................. 3, 11, 14, 15

*Hannula v. City of Lakewood,*
    907 F.2d 129, 132 n.3 (10th Cir. 1990) ................................................... 12

*Harlow v. Fitzgerald,*
    457 U.S. 800, 817-18, 102 S. Ct. 2727, 2738 (1982) ...................................... 2

*Harper v. Merkle,*
    638 F.2d 848, 860 (5th Cir.), cert. denied, 454 U.S. 816, 102 S. Ct. 93 (1981) ........... 3

*Harpole v. Arkansas Dept. of Human Servs.,*
    820 F.2d 923, 928 (8th Cir. 1987) .......................................................... 1

*Hart v. O'Brien,*
    127 F.3d 424, 450 (5th Cir. 1997) ......................................................... 19

*Ikerd v. Blair,*
    101 F.3d 430, 434 (5th Cir. 1996) ......................................................... 12

*Johnson v. Glick,*
    481 F.2d 1028, 1033, cert. denied, 414 U.S. 1033, 94 S.Ct. 462 (1973) ..................... 11

*Johnson v. Morel,*
    876 F.2d 477, 479-80 (5th Cir. 1989) (en banc) ............................................ 12

*Kipps v. Caillier,*
    197 F.3d 765, 768 (5th Cir.), cert. denied 531 U.S. 816, 121 S. Ct. 52 (2000) ............. 2

*Linbrugger v. Abercia,*
  363 F.3d 537, 542-43 (5th Cir. 2004) ...................................................................... 11

*McClendon v. City of Columbia,*
  305 F.3d 314, 323 (5th Cir. 2002) ........................................................................... 2

*Meadours v. Ermel,*
  483 F.3d 417, 422 (5th Cir. 2007) ......................................................................... 13

*Mendenhall v. Riser,*
  213 F.3d 226, 230 (5th Cir. 2000) ................................................................... 15, 18

*Montoute v. Carr,*
  114 F.3d 181, 184 (11th Cir. 1997) ....................................................................... 18

*Neague v. Cynkar,*
  258 F.3d 504, 508 (6th Cir. 2001) ......................................................................... 12

*Niehus v. Liberio,*
  973 F.2d 526, 533 (7th Cir. 1992) ........................................................................... 1

*Ontiveros v. City of Rosenberg,*
  564 F.3d 379, 382 (5th Cir. 2009) ......................................................................... 12

*Ornelas v. United States,*
  517 U.S. 690, 696-97, 116 S. Ct. 1657, 1661-62 (1996) ..................................... 4, 11

*Pearson v. Callahan,*
  __ U.S. __, 129 S.Ct. 808 (2009) ............................................................................. 2

*Pfannstiel v. City of Marion,*
  918 F.2d 1178, 1183 (5th Cir. 1990) ................................................................. 8, 10

*Pierce v. Smith,*
  117 F.3d 866, 882 (5th Cir. 1997) ......................................................................... 15

*Price v. Roark,*
  256 F.3d 364, 369 (5th Cir. 2001) ........................................................................... 3

*Salas v. Carpenter,*
  980 F.2d 299, 304-06 (5th Cir. 1992) .............................................................. ii, 15

*Sanchez v. Swyden,*
  139 F.3d 464, 466 (5th Cir.1998) ......................................................................... 16

*Saucier v. Katz,*
  533 U.S. 194, 199, 121 S. Ct. 2151, 2155 (2001) ............................................ passim

*Sorrenson v. Ferrie,*
   134 F.3d 325, 330 (5th Cir. 1998) ........................................................ 3

*Swint v. Chambers County Commission,*
   514 U.S. 35, 42, 115 S. Ct. 1203, 1208 (1995) .................................... 2

*Tarver v. City of Edna,*
   410 F.3d 745, 751-52 (5th Cir. 2005) ................................................. 13

*Texas v. Brown,*
   460 U.S. 730, 742, 103 S. Ct. 1535 (1983) .......................................... 4

*U.S. v Campbell,*
   178 F.3d 345, 349-50 (5th Cir. 1999) ................................................... 5

*U.S. v. Sanders,*
   994 F.2d 200, 203 (5th Cir. 1993) ............................................... 4, 5, 13

*United States v. Hensley,*
   469 U.S. 221, 235, 105 S. Ct. 675, 684 (1985) .................................... 5

*United States v. Martinez,*
   808 F.2d 1050, 1053 (1987) ................................................................... 4

*United States v. Michelletti,*
   13 F.3d 838, 840 (5th Cir. 1994) (en banc) ...................................... 4, 5

*United States v. Santiago,*
   310 F.3d 336, 340 (5th Cir. 2002) ....................................................... 5

*United States v. Silva,*
   957 F.2d 157, 161 (5th Cir. 1992) ....................................................... 8

*United States v. Tellez,*
   11 F.3d 530, 532 (5th Cir. 1993) ......................................................... 8

*Vance v. Nunnery,*
   137 F.3d 270, 274 (5th Cir. 1998) ..................................................... 18

*Williams v. Bramer,*
   180 F.3d 699, 703 (5th Cir. 1999) ................................................. 12, 14

*Wilson v. Layne,*
   526 U.S. 603, 615, 119 S. Ct. 1692, 1799 (1999) .............................. 16

*Young v. Prince George's County,*
   355 F.3d 751, 755 (4th Cir. 2004) ..................................................... 13

<u>State Cases</u>

*Brooks v. State,*
    76 S.W. 3d 426, 434 (Tex.App.-Houston [14th Dist.] 2002, no pet) ........................................ 9

*Green v. State,*
    892 S.W.2d 217, 218 (Tex.App. - Texarkana 1995, pet. ref'd) ................................................. 9

*Guillory v. State,*
    99 S.W.3d 735, 741 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).................................... 8

*Lancaster v. Chambers,*
    883 S.W.2d 650, 656 (Tex.1994)......................................................................................... 19

*Martinez v. State,*
    644 S.W.2d 104, 109 (Tex.App. - San Antonio 1992, no writ)................................................. 9

*Pina v. State of Texas,*
    127 S.W.3d 68, 75 (Tex.App. - Houston [1st Dist.] 2003, no pet.)........................................... 8

*Ramos v. Texas Department of Public Safety,*
    35 S.W.3d 723, 726 (Tex. App.— Houston [1st Dist.] 2000, pet. denied)........................ 19, 20

*State v. Mayorga,*
    901 S.W.2d 943, 945 (Tex.Cr. App. 1995, pet. denied) ............................................................ 9

*Vactor v. State,*
    181 S.W.3d 461, 467 (Tex.App.-Texarkana 2005) .................................................................. 9

*White v. State,*
    601 S.W.2d 364, 367 (Tex. Cr. App. 1980)............................................................................. 9

<u>State Statutes</u>

TEX. PENAL CODE § 38.03 ........................................................................................................ 9

TEX. PENAL CODE § 38.04.......................................................................................................... 8

TEX. PENAL CODE § 38.15 ........................................................................................................ 9

## ARGUMENT AND AUTHORITIES

## EMILY MILBURN LACKS STANDING FOR INDIVIDUAL CAPACITY CLAIMS

4.     The law is well-settled that one cannot sue for alleged violations of another individual=s constitutionally protected rights and neither the Plaintiffs= pleading allegations, nor the record evidence, indicates that any Defendant deprived Emily Milburn of any constitutionally protected, or state law, right. A[T]he ' 1983 action is a personal suit.  It does not accrue to a relative, even the father of the deceased.@ *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60 (1982). AProtecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of [alleged] wrongful state conduct, especially when the loss is an indirect result of that conduct.@  *Niehus v. Liberio*, 973 F.2d 526, 533 (7th Cir. 1992) (*quoting Harpole v. Arkansas Dept. of Human Servs.*, 820 F.2d 923, 928 (8th Cir. 1987).  In accord with this well-settled principal, the Fifth Circuit has held that even a wife has no constitutional claim arising out of a use of force involving her husband when, as here, she, herself, did not personally observe the actual use of force. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986. In this case, Emily Milburn purports to prosecute claims individually and as next friend of Dymond Milburn but there is no identifiable basis within the record for Emily Milburn to assert individual capacity claims on her own.[2] Accordingly, Emily Milburn lacks standing to assert claims in her individual capacity.

---

[2]     At least that seems to be the case based upon the style of the case. However, there are no pleading allegations within the body of the complaint which provide any guidance as to the basis of standing for Emily Milburn to assert claims. The Defendants, in their answer and defenses, have specifically challenged the sufficiency of the Plaintiff's pleadings, as well as the Plaintiff's standing to assert individual capacity claims.

## THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

5.    The Defendants are entitled to summary judgment because the record establishes that Plaintiffs cannot disprove the Defendants' qualified immunity. "Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.), *cert. denied* 531 U.S. 816, 121 S. Ct. 52 (2000). Governmental officials performing discretionary functions generally are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 2738 (1982). Prominently, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers County Commission*, 514 U.S. 35, 42, 115 S. Ct. 1203, 1208 (1995); *accord McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

6.    Qualified immunity has two separate and distinct components,[3] whether a constitutional deprivation has occurred at all and also whether conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. *Saucier v. Katz*, 533 U.S. 194, 199, 121 S. Ct. 2151, 2155 (2001); *accord Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (citations omitted). Even if a trial court determines a factual dispute exists whether violation of a constitutionally protected right has occurred, the Court must still determine whether the right allegedly violated, considering the specific circumstances of the case, was clearly established in a particularized sense at the time a defendant was alleged to have violated it. *Saucier*, 533 U.S. at 201-02, 121 S. Ct. at 2155-56.

---

[3]    The Court has discretion to determine the order in which to analyze the two prongs of the immunity defense. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

**MILBURN WAS NOT DEPRIVED OF A CONSTITUTIONALLY PROTECTED RIGHT**

7.      First, summary judgment is required because the record establishes that the Officers were authorized under the Constitution to arrest Dymond Milburn. *See Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 1873 (1968). A claim of alleged unlawful arrest brought under § 1983 imposes liability only for violation of a constitutionally protected right; therefore, it cannot be viewed exclusively in terms of traditional tort-law concepts, *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 2693 (1979); *Harper v. Merkle*, 638 F.2d 848, 860 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S. Ct. 93 (1981). There is simply no federally based cause of action for a claimed unlawful arrest unless a law enforcement officer lacked probable cause for an arrest because § 1983 is a federally created cause of action to redress civil rights violations; not a method of compensating for actions which, while constitutional, might be the source of judicial second-guessing in the calm, deliberative, world of the court. *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1989); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

8.      Therefore, to trigger Fourth Amendment liability based upon an allegation of an alleged unlawful arrest arising under § 1983, a plaintiff bears the burden of proving an officer lacked probable cause for an arrest. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Sorrenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998). Probable cause does not require proof of guilt, rather it exists for an arrest where the facts and circumstances within an officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11 (1949).

9.      A determination of probable cause turns on an assessment of probabilities in factual contexts, viewed from an objectively reasonable point of view. *See Ornelas v. United States*, 517 U.S. 690, 696-97, 116 S. Ct. 1657, 1661-62 (1996). The record before the court here plainly establishes that the Officers could reasonably have believed probable cause existed to arrest Dymond Milburn.

### *Officers Were Entitled to Temporarily Detain Milburn to Investigate Reasonable Suspicions*

10.     The Officers were entitled, under the constitution, to temporarily detain Milburn to investigate their reasonable suspicion, even absent probable cause to arrest her initially. *See United States v. Martinez*, 808 F.2d 1050, 1053 (1987). Pursuant to *Terry*, 392 U.S. at 30, 88 S. Ct. at 1885, "[t]he Fourth Amendment requires only a minimum level of objective justification for the officers' actions - but more than a hunch - measured in light of the totality of the circumstances." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (*en banc*).

11.     Importantly, "[t]his reasonable suspicion standard is less demanding than the probable cause standard." *U.S. v. Sanders*, 994 F.2d 200, 203 (5th Cir. 1993). Justification for an investigative detention "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535 (1983).  Notably, legal justification for an investigative detention like that of which Plaintiffs complain in this case is based upon a much lower standard than guilt, or even probable cause. *See Fields*, 922 F.2d at 1189. The Fourth Amendment permits a detention based upon *reasonable suspicion* even where probable cause, let alone guilt, remains an open question.

12.     The law is equally clear that a law enforcement officer may lawfully "**take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop**." *United States v. Hensley*, 469 U.S. 221, 235, 105 S. Ct. 675,

684 (1985) (emphasis added); *U.S. v Campbell*, 178 F.3d 345, 349-50 (5th Cir. 1999); *U.S. v. Sanders*, 994 F.2d 200, 210 (5th Cir. 1993).

> "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [*T*]*erry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

*Adams v. Williams*, 407 U.S. 143, 145-46, 92 S. Ct. 1921, 1923 (1972) (citations omitted).

13.    Therefore, a detention such as that which occurred in this circumstance simply does not violate the Constitution when specific, articulable facts, taken together with rational inferences from those facts, reasonably warrant a detention. *See United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). "This court reviews the reasonableness of an investigatory stop and frisk *de novo* as a conclusion of law." *Michelletti*, 13 F.3d at 841.

14.    The summary judgment record establishes the Defendants promptly responded to a police dispatch of reported prostitutes and drug dealers at a specific block in Galveston. The officers were familiar with the area as a haven for street level drug and vice activity and Officer Roark had recently conducted investigations of both in the area. Roark and the others know that the common practice in the area was for drug dealers to hide quantities of illegal drugs near the streets for sale to individuals approaching in vehicles or on foot. The drug dealers operating in this area typically hid contraband in the nearest place they could find including electrical circuit breaker boxes on houses, and, when they saw police, they commonly fled if unable to hide from the police. Often, drug dealers who operated in this area concealed themselves and their contraband around and under residences and out buildings which belonged to individuals who were not involved in their drug trade. {*Exs. E-I;P*}.

15.     The Defendants responded to the report to investigate and, as the officers approached the block of the call, they observed only one female on the block, Dymond Milburn. {*Exs. E-I*}. Dymond Milburn initially walked toward the officers until she suddenly did an about face and slipped around the corner of a house at 2001 24th Street near a bushy tree. {*Exs. A, p. 14, ll 16-24; p. 15, ll 1-4, 11-15; p. 27, ll 7-10; p. 15, ll. 21 – 25; p. 16, ll. 6-9; E-I*}.

16.     Many individuals involved in the drug and vice trade do similar quick turns and step out of view when they encounter the police department's fairly well-known blue van, so the officers' suspicions regarding Dymond were heightened when she performed this unexlainable maneuver. {*Exs. F-H*}. Additionally, Officer Roark knew that Wilfred Milburn and his son lived at this house and Officer Roark had previously received complaints from neighbors that Wilfred and his teen age son sold drugs from the curbside adjacent to this house. {*Ex. H*}. Officer Roark knew Wilfred had been previously arrested for drug offenses and, when Officer Roark received those prior complaints about Wilfred's reported drug dealing, Officer Roark discussed the allegations with Wilfred. {*Ex, H*}. In light of all this information, Officer Roark reported to the other officers in the van that he had seen a female "ducking out" on the right. {*Ex. H*}.

17.     Ducking out is a term often used in police parlance to describe suspicious actions of an individual who appears to be attempting to secret or conceal herself while engaged in criminal activity. Therefore, Officers Roark and Stewart stepped out of the van to investigate whether criminal conduct was occurring in the area where they had received the report of the same. The Defendants planned to speak with Dymond in an effort to determine whether she may be involved in, or know of, prostitution or drug dealing. {*Exs. E-I*}.

18.     Officers Roark and Stewart were wearing shirts emblazoned with the word "Police" in large lettering on the front and back. {*Exs. A, p. 18, ll. 15 – p. 19, ll. 4; E-I*}. As they exited the van, Officers Stewart and Roark both announced "Police" loudly enough so that Dymond and others in the area, in addition to seeing, could also plainly hear that they are police officers. {*Exs. G-I*}. When Officers Roark and Stewart approached calling out the word "police," Dymond walked up to an electrical circuit breaker box on the home near a bushy tree, reached into the breaker box and then quickly ran from the breaker box and into the bushy tree. {*Exs. A, p. 18, ll. 15 – p. 19, ll. 4; p. 27, ll 7 – p. 29, ll 13, p. 29, ll 18-p. 30, l 9; 31, ll 5 - p. 32, l 4; E-I*}. These furtive activities further heightened the officers' suspicions because street level drug dealers often conceal drugs in places like breaker boxes and the officers had been dispatched to investigate reported drug dealing. {*Exs. E-I*}. Also, most people don't flee at the mere sight of an approaching law enforcement officer as Dymond did here. {*Exs. H-I*}.

19.     Officer Stewart approached Dymond {*Exs. A, p. 32, l 22 - p. 33, ll 7; p. 36, ll. 5-9; G; H*} but she turned and ran in the opposite direction. {*Exs. A, p. 33, ll 6-p. 34, ll 2; p. 34, ll 7-21; G; H*}. The approaching officers were concerned for their safety by that time because they could not determine what Dymond was doing in the tree and, if she were armed, as drug offenders often are, the officers would have no way of even knowing it because their view was obstructed by the bushy limbs on the tree Dymond was concealing herself in. {*Ex, H*}. Officer Roark, therefore, spread the bushy limbs to the side and said "it's the police, why are you running for." {*Ex. H*}. Officer Roark tried to take hold of Dymond's wrists to apply handcuffs but he couldn't do so because Dymond continued to flail about inside the branches. {*Exs. E-I*}. Dymond refused to submit to temporary detention. {*Exs. E-I*}.

20.     Eventually, Officer Roark was ultimately able to apply one handcuff to Dymond's left wrist, but she wrapped her right arm and leg around the trunk of the tree so Officer Roark still could not gain control of her or remove her from the tree. {*Exs. A, p. 36, ll. 15 – p. 37, ll. 25;p. 38, ll. 20-22; p. 40, ll. 9-11; p. 46 ll. 1-4; p. 47, ll. 12-16; p. 50, ll. 19-24; C, P. 7, ll. 1-7; p. 7, ll. 9-12; p. 7, ll. 14-18; p. 8, ll. 19-22; p. 9, ll. 15-p. 10, ll. 6; p. 11, ll. 6-11; p. 15, ll. 15-p. 17, ll. 7; p. 17, ll. 13-18; p. 20, ll. 24-p. 21, ll. 3*; E-I}. This record plainly shows that the Defendants had reasonable suspicion to temporarily detain Dymond. *See United States v. Silva*, 957 F.2d 157, 161 (5th Cir. 1992); *accord United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993).

<u>*Probable Cause Existed to Arrest Milburn*</u>

21.     The record also plainly establishes that probable cause existed to arrest Dymond Milburn.[4] "The standard of probable cause applie[s] to all arrests, without the need to balance the interests and circumstances involved in the particular situations.'" *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001) (*quoting Dunaway v. New York*, 442 U.S. 200, 208, 99 S. Ct. 2248 (1979).   If an officer has probable cause to believe an individual has committed even a very minor criminal offense, he may lawfully arrest the offender. *Id*. Therefore, probable cause to arrest a suspect for *any offense* is a *complete defense* to an unlawful arrest claim under § 1983. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

22.     Under Texas law, a person commits the criminal offense of evading arrest or detention when she intentionally flees from a person she knows is a law enforcement officer attempting to lawfully detain her. TEX. Penal CODE § 38.04; *Pina v. State of Texas*, 127 S.W.3d 68, 75 (Tex.App. — Houston [1st Dist.] 2003, no pet.); *Guillory v. State*, 99 S.W.3d 735, 741 (Tex.App.—Houston [1st Dist.] 2003, pet. ref'd); *Green v. State*, 892 S.W.2d 217, 218 (Tex.App.

---

[4]     There is certainly no question that the Officers could reasonably have believed probable cause existed to support Milburn's arrest, which is all that is required in light of their assertion of individual immunity.

— Texarkana 1995, pet. ref'd); *Martinez v. State*, 644 S.W.2d 104, 109 (Tex.App. — San Antonio 1992, no writ).

23.     Additionally, a person commits the crime of interfering with public duties when, with criminal negligence, she interrupts, impedes, or otherwise interferes with a peace officer while the officer is performing a duty or exercising his authority. TEX. Penal CODE § 38.15.  Also, a person commits the criminal offense of resisting arrest, search or transport when she prevents or obstructs a peace officer from effecting an arrest, search, or transportation of the actor by force. TEX. PENAL CODE § 38.03; *White v. State*, 601 S.W.2d 364, 367 (Tex. Cr. App. 1980); *Vactor v. State,* 181 S.W.3d 461, 467 (Tex.App.—Texarkana 2005). Resisting arrest is unlawful, and it is no defense to prosecution that the attempted arrest or search was unlawful. Cf.*, State v. Mayorga*, 901 S.W.2d 943, 945 (Tex.Cr. App. 1995, pet. denied).   An individual must submit to an investigative detention even when she *subjectively believes* she *wasn't doing anything wrong*.[5] *See Brooks v. State*, 76 S.W. 3d 426, 434 (Tex.App.—Houston [14th Dist.] 2002, no pet.).

24.     The record here establishes that when Officer Roark informed Dymond she was about to be arrested, she did not submit but, instead, continued to resist and yelled for, and received, assistance from her family. {*Ex, H*}. Wilfred Milburn, who is himself a proven frequent drug possessor and reported drug dealer, approached in an enraged state, verbally threatening the officers and accompanied by his pit bull dog that bit Officer Roark {*Exs A, p. 40, ll. 11-21; C,  p 13, ll. 22 – p. 14, ll. 21;D, p. 26, ll. 15-20; . D, p. 29, ll. 3-10; p. 42, l. 25-p. 43, l. 15; H; L; P*} and Dymond's brother armed himself with a shovel and approached the officers. {*Exs. C, p 11, ll. 21 – p. 12, ll. 2; p. 12, ll. 25-p. 13, ll. 3, p. 13, ll. 15-21*; G}.

---

[5]     Such a contention certainly fails under the constitutional standard applicable here.  *See Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1989).

25.      In the meantime, Dymond also continued yelling obscenities such as "fuck the police," "fuck all of you," "I don't care, I aint fucking going with them," and "let me go." {*Exs. E-I*}. The officers asked Dymond to calm down, put her hands behind her back and to quit cursing but, instead, she continued to thrash, jerk, pull and twist away from Officer Roark while he held on to her one handcuffed arm. {*Exs. E-I*}. Terry Ritter, the citizen who asked that the police be dispatched to address criminal conduct testified that – based upon the events that were occurring which her personally perceived - even he feared for the Officers' safety, that he called the dispatcher and reported those fears and that "[y]our officers are getting their ass whooped." {*Ex. D, p. 23, l. 1-p. 25, l. 20; J*}. Ritter testified that the police were losing on all fronts. {*Ex. D, p. 26, ll. 7-14; J*}.

26.      The Officers were, thus, authorized to arrest Milburn for evading arrest or detention, interfering with a police investigation and resisting arrest search or transport. *See Terry*, 392 U.S. at 9, 88 S. Ct. at 1873. This probable cause to arrest her applied at the scene of the events and extended to the date when she was subsequently arrested later based upon the conduct that occurred at the scene. *Id.*; See also {*Exs. L-M*}.

27.      Dymond was not arrested on the scene because Wilfred took her into her house before the situation was calmed sufficiently to allow officers on the scene to arrest her peaceably. {*Ex. G*}. Sergeant Gomez, therefore, determined a better course of action to avoid unnecessary resistance to arrest would be to arrest Dymond later after she and her parents had an opportunity to calm down. {*Ex. G*}. This is the course of action the officers took and probable cause existed to arrest Dymond, regardless of the timing of the arrest. *See Pfannstiel*, 918 F.2d at 1183.

<u>*Officers Authorized to Use Reasonable Force to Detain Milburn*</u>

28.     The Officers were also authorized, under the Constitution, to use reasonable force to detain Milburn. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). Law Enforcement officers are often required to use force to accomplish their duties and "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033, *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462 (1973)). In *Graham*, the Supreme Court held, in order to sustain a cause of action for use of excessive force, the evidence must establish a use of force was "objectively unreasonable." 490 U.S. at 397; 109 S. Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. As such, settled law acknowledges the practical reality that "a police officer views the facts through the lens of his police experience and expertise." *Ornelas v. United States*, 517 U.S. 690, 699-700, 116 S.Ct. 1657, 1663 (1996). Controlling precedent thus mandates that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. This constitutionally required mandate must be followed even in the summary judgment context when the court is also required to consider evidence in the light most favorable to the person alleging a use of excessive force. *See Linbrugger v. Abercia*, 363 F.3d 537, 542-43 (5th Cir. 2004); *Fraire v. City of Arlington*, 957 F.2d 1268, 1270 (5th Cir. 1992); *Ballard v. Burton*, 444

F.3d 391, 402-03 (5th Cir. 2006).

29.　　Consistent with Supreme Court authority, the Fifth Circuit Court of Appeals has established a three part test for consideration of a claim of excessive force during detention. In order to prevail on an excessive force claim, a plaintiff must show (1) some injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). "There can be a constitutional violation only if injuries resulted from the officer's use of excessive force. Injuries which result from, for example, an officer's justified use of force to overcome resistance to arrest do not implicate constitutionally protected interests." *Johnson v. Morel*, 876 F.2d 477, 479-80 (5th Cir. 1989) (*en banc*). Fifth Circuit precedent is clear that, if any of the elements of a claim under this test fail, so too does a plaintiff's claim. *Id.*

### *The Defendants Were Permitted to Handcuff Milburn*

30.　　As an initial matter, the record establishes that Officer Roark was permitted, under clearly established law, to place handcuffs on Milburn. To support a claim of use of excessive force, Milburn must have suffered some form of injury from an alleged use of excessive force. *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). Force is *de minimus*, for constitutional purposes, when it is insufficient to satisfy the legal standard necessary for recovery. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). Several Courts of Appeal have held that complaints of pain and minor injuries to the wrists related to detention or handcuffing do not provide the basis for a § 1983 claim. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1007-08 (8th Cir. 2003) (collecting cases); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001); *Hannula v. City of Lakewood*, 907 F.2d 129, 132 n.3 (10th Cir. 1990). It is equally well established in the Fifth Circuit, that mere handcuffing is not a basis for an excessive force claim against a police

officer. *See Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996). "[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

31.    Instead, when an individual reasonably suspected of involvement in crime attempts to frustrate an inquiry into her conduct by flight, "[h]andcuffing [is] an appropriate method of maintaining the status quo while further inquiry [is] made." *Sanders*, 994 F.2d at 206 (*quoting United States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976)). "[A]n officer may handcuff a suspect when 'reasonably necessary to maintain the status quo and protect [officer] safety during an investigative stop.'" *Young v. Prince George's County*, 355 F.3d 751, 755 (4th Cir. 2004) (quoting *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988)).

### *Force Allegedly Used Was Not Clearly Excessive to the Need*

32.    The force reasonably supported by the record was not clearly excessive to the need for use of force. The record establishes that Sergeant Gomez used no force against any Plaintiff.[6] The only force the Plaintiffs allege any officer, other than Officer Roark, used was Officer Stewart's alleged slap of Dymond's face while she was resisting detention and before she was secured by handcuffs. {*Ex. A, p. 47, ll 18-24; p. 48, ll 20-25; p. 48 l 20-p. 49, l -12; p. 51, ll 16-21; p. 57, ll 8-10; p. 82, ll 9-11*}. If Dymond mistakenly interpreted inadvertent contact with Officer Stewart's hand as a slap during the time she ran about inside the bush, such contact – if any such occurred - would have been a permissibly level of force in response to Dymond's admitted resistance to the Officers' reasonable efforts to remove her from the bush to safely

---

[6]    Each individual's claimed immunity must be evaluated separately. *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

temporarily detain her while they conducted their investigation. {*Exs.G-I*}. The record establishes that this alleged minimal contact between Dymond and Officer Stewart was less force than necessary to the need because the officers were still unable to successfully arrest Dymond even after the alleged slap. {*Exs. E-J*}.

33.    Similarly, the force Officer Roark used – and even that he was alleged to have used – was likewise less force than that necessary to the need because the officers were still unable to ever successfully arrest Dymond at the scene of the occurrence.[7] Thus, the force the Defendants used was not clearly excessive to the need and so they are entitled to dismissal of the claim of excessive use of force brought against them. *See Williams*, 180 F.3d at 703.

### *Force Plaintiff Claims Used Was Objectively Reasonable*

34.    Likewise, the record shows that the force the Defendants used was not objectively unreasonable. Supreme Court precedent demands that the "standard of reasonableness at the moment applies" in considering a claim of excessive use of force. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. Therefore, as the *Graham* Court discussed, appropriate application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 1872.

35.    Applying these standards to this instant case, Plaintiffs' claims of alleged use of excessive force fail because the record establishes that Dymond actively resisted arrest, attempted to evade

---

[7]    Dymond offers various differing versions of events in which she alleges that Officer Roark struck her in the neck with the side of his hand and that Officer Roark struck her with a flashlight. {*Ex. A, p. 54, ll. 4-10, ll. 15-24, p. 55, ll. 2-12,* , p. 56, ll. 1-8, P. 56, ll. 18-24, *p. 57, ll. 4-19*, p. 58, ll. 7 – p. 59, ll. 21; p. 60 l 4-8, p. 64, ll. 16-18, p. 65, ll. 7-18, 25 – p. 66 l-2, p. 69, ll. 8-14, p. 69 ll. 16-22, P. 72, ll. 8-23, p. 73 ll. 11-25; *p. 75, ll. 2-7; p. 75, l 2-7; p. 75, l 24-p. 76 ll. 6;* p. 77, ll. 24-p. 78, ll. 15; p. 79 ll. 13-17; *p. 80, ll. 12-22;* p. 81 ll. 23-p. 82 ll. 3; p. 82, ll. 15-22; p. 82, ll. 23-p. 83 ll. 8}.

arrest by flight, and posed an immediate threat to the safety of the Officers present. Under this factual record, the Defendants' actions cannot be deemed excessive. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872.

<u>*Officers Did Not Deprive a Plaintiff of a Clearly Established Right*</u>

36.    The record likewise establishes that no Defendant deprived any Plaintiff of a clearly established constitutionally protected right of which a reasonable official would have known. "The second prong [of a qualified immunity analysis] 'is better understood as two separate inquiries: whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was *objectively unreasonable* in the light of that then clearly established law.'" *Felton v. Polles,* 315 F.3d 470, 477 (5th Cir. 2002) (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998)).

37.    The second step of the analysis "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or factual setting in which it took place."  Pierce v. Smith, 117 F.3d 866, 882 (5th Cir. 1997).  To defeat a public servant's assertion of qualified immunity, a plaintiff must demonstrate that an officer violated clearly established federal rights.  *Salas*, 980 F.2d at 306.  Whether a right was clearly established is an inquiry which "must be undertaken in light of the case's *specific context*, not as a broad general proposition."  *Saucier*, 533 U.S. at 201-02, 121 S. Ct. at 2156 (emphasis added).

38.    If the law did not put the officer on notice *his conduct would be clearly unlawful*, dismissal based on qualified immunity is appropriate.  *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156; *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).  "Clearly established for qualified immunity purposes means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Wilson v. Layne*,

526 U.S. 603, 615, 119 S. Ct. 1692, 1799 (1999); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.1998).    The right the official is alleged to have violated must, therefore, be clearly established in a *particularized* sense. *Brousseau*, 543 U.S. at 198, 125 S. Ct. at 599; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3039 (1987); *Wagner*, 227 F.3d at 321. Prominently, "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity." *Ontiveros*, 2009 WL 807450 * 3 n. 1.

39.    Here, the Plaintiffs fail in their burden to overcome the Defendants' qualified immunity because, in light of the relevant context of the facts within the record, a reasonable law enforcement officer could not have had fair notice that the Defendants' conduct was clearly unlawful, as is required to overcome their immunity. See *Wagner*, 227 F.3d at 323-25.  In fact, the evidence clearly disproves such an assertion. *See id*. Evaluating the specific factual circumstances of this case, there is no clearly established law which would have placed the Defendants on notice that their decisions would violate constitutional protections. "Here, case law does not provide the necessary precedent, either specifically or through broad principles, to clearly establish the right." *Lewis v. City of West Palm Beach*, __ F.3d __, 2009 WL 606546 (11th Cir. 2009).  If, therefore, the Court concludes a disputed genuine issue of material fact exists regarding whether probable cause existed to arrest Dymond, all Defendants are still entitled to qualified immunity on Plaintiffs' claims of alleged unlawful arrest.

40.    Likewise, even if the Court concludes a disputed genuine issue of material fact exists regarding whether an Officer used excessive force, the Defendants are still entitled to qualified immunity on Plaintiffs' claims of alleged use of excessive force. There is simply no clear body of law or of widely accepted factual information which would have placed the Defendants on notice that they were prohibited from responding as they did. *See Brousseau*, 543 U.S. at 199, 125 S.

Ct. at 599.  Plaintiffs' allegations fail to recognize that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau*, 543 U.S. at 198, 125 S.Ct. at 599. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id*. "Qualified immunity operates in this case, then, just as it does in others, to protect officers from the sometimes 'hazy border between excessive and acceptable force.' and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158 (quoting *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)).  Therefore, "[t]he relevant, dispositive inquiry…is whether it would be clear to a reasonable officer that his conduct was unlawful **in the situation he confronted**." *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156 (emphasis added). Thus, even if the Court concludes that the Defendants' alleged action was unconstitutional, there is certainly no evidence establishing that any such conduct was *clearly unlawful* in the circumstances of this case.  *See Terry*, 392 U.S. at 17, 88 S. Ct. at 1877, n. 13; *Nolin*, 207 F.3d at 1258 n. 4.

41.    As discussed in detail *supra*, the record establishes that the Defendants acted reasonably – based upon a reasonable perception of the events even if those perceptions are later determined to be in dispute.  As discussed in detail *supra*, the record shows that the Defendants had a reasonable explanation for their actions and that it was not clearly unlawful for them to conclude their actions were appropriate under the factual record before the Court.  Accordingly, the

Defendants are entitled to immunity because their actions were not clearly unlawful. *See Brousseau*, 543 U.S. at 198, 125 S.Ct. at 599; *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156.

<u>*Defendants' Actions Were Objectively Reasonable Under Established Law*</u>

42.     The Plaintiff also fails to overcome the Defendants' qualified immunity because the record clearly establishes that a reasonable officer could have believed the actions of the Officers were lawful. To overcome an assertion of qualified immunity, a plaintiff must prove that *no reasonable government official could have believed* the accused officials' alleged conduct was lawful in light of the information he possessed and clearly established law. *Mendenhall*, 213 F.3d at 231; *see also Babb v. Dorman,* 33 F3d 472, 477 (5th Cir. 1994). **If officials of reasonable competence could disagree as to whether the alleged conduct violated a plaintiff's rights, immunity remains intact.** *See Malley*, 475 U.S. at 341, 106 S. Ct. at 1096.

43.     Thus, even if the Defendants' conduct is determined, with the benefit of hindsight to be imprudent, they are still entitled to the protections of qualified immunity if they could reasonably have believed their actions proper under the circumstances he faced at the time. *See Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Stated differently, a police officer is entitled to qualified immunity when even an *arguable* basis for his actions exists. *See Mendenhall,* 213 F3d at 231 and *Vance v. Nunnery*, 137 F.3d 270, 274 (5th Cir. 1998); *see also Babb,* 33 F3d at 477.

44.     Therefore, if a reasonable officer, possessing the same information known to the Defendants at the time of the occurrence, could have believed their acts lawful in light of clearly established law, the Defendants are entitled to dismissal of the claims against them based upon their immunity. *Anderson*, 483 U.S. at 641, 107 S. Ct. 3039-40. The summary judgment record establishes that a retired FBI agent analyzed the Defendants actions and concluded that the Defendants acted in conformity with established law enforcement training and common police

procedure. {*Ex. J*}. The Defendants reacted to Dymond's actions and the Defendants could not reasonably be expected to know she was not engaged in criminal conduct when she was involved in suspicious activities. {*Ex. J*}. Dymond could have conveyed this to the Defendants but, instead, she chose to flee from them. {*Ex. J*}. The Defendants, therefore, understandably, elected to arrest her and charge her with one of the crimes she admittedly committed. {*Ex. J*}.

45.     Therefore, at a minimum, an arguable basis existed for the Defendants' actions. As such, even if the Court determines that a Defendant had a mistaken understanding of the lawfulness of their actions under the circumstances, there is no question their actions were arguably justifiable and they are entitled to individual immunity. *See id*. Accordingly, the summary judgment record does not overcome the Defendants' qualified immunity, so they are entitled to dismissal of the claims brought against him. *See Saucier*, 533 U.S. at 201-02, 121 S. Ct. at 2155-56; *Snyder*, 142 F.3d at 800-01.

### THE DEFENDANTS ARE ENTITLED TO OFFICIAL IMMUNITY FROM STATE LAW CLAIMS

46.     The record, likewise, establishes that the Defendants are entitled to dismissal of the state law claims brought against them because they are entitled to official immunity under Texas law. Official immunity in Texas is essentially the same as qualified immunity under federal law. *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997) (*citing Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994). Official immunity also protects a public servant from suit for actions arising from the good faith performance of discretionary duties, within the scope of his authority. *Chambers*, 883 S.W.2d at 653. The official immunity doctrine protects governmental employees from civil liability for conduct even if the conduct would otherwise be actionable. *Ramos v. Texas Department of Public Safety*, 35 S.W.3d 723, 726 (Tex. App.— Houston [1st Dist.] 2000, *pet. denied*). Therefore, the Defendants are entitled to official immunity and dismissal of all

common law tort claims against them in light of the objective reasonableness of their conduct for the same reasons discussed fully *supra* regarding qualified immunity.

## **CONCLUSION AND PRAYER**

47.     The record evidence establishes there is no genuine issue of any material fact which would prevent the Court from granting summary judgment in the Defendants' favor, as a matter of law. Specifically, the evidence establishes that probable cause supported Dymond Milburn's arrest. Moreover, the record establishes that Sergeant Gomez used no force against a Plaintiff and that Officer Stewart and Officer Raork did not use excessive force against any Plaintiff.

48.     Furthermore, the Defendants could not have been on notice that their conduct was prohibited by clearly established law and all Defendants are entitled to qualified and official immunity from Plaintiffs' claims. For these reasons, the Defendants respectfully move this Court to grant their motion for summary judgment, dismiss Plaintiffs' claims and allegations against the Defendants with prejudice, and afford the Defendants all other relief to which they are justly entitled in law and equity.

Respectfully Submitted,

By:/S/ Norman Ray Giles
        WILLIAM S. HELFAND
        Attorney-in-charge
        SBOT: 09388250; Fed. I.D. 8791
        NORMAN RAY GILES
        SBOT: 24014084; Fed. I.D. 26966

CHAMBERLAIN, HRDLICKA, WHITE,
        WILLIAMS & MARTIN
1200 Smith Street, Suite 1400
Houston, Texas  77002
(713) 654-9630
(713) 658-2553 (Fax)
ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record via certified mail, return receipt requested on this 16th day of September, 2009 as follows:

Anthony P. Griffin
A Griffin Lawyers
115 Moody
Galveston, Texas 77550

Donald S. Glywasky
Galveston County Legal Department
722 Moody, 5th Floor
Galveston, Texas 77550

/S/ Norman Ray Giles
Norman Ray Giles

# APPENDIX

## Table of Contents

A.    Relevant excerpts from the deposition testimony of Dymond Milburn;
B.    Relevant excerpts from the deposition testimony of Emily Milburn;
C.    Relevant excerpts from the deposition testimony of Wilfred Milburn;
D.    Relevant excerpts from the deposition testimony of Terry Ritter;
E.    Declaration of Officer Joey Quiroga;
F.    Declaration of Sergeant Gilbert Gomez;
G.    Declaration of Officer Sean Stewart;
H.    Declaration of Officer David Roark;
I.    Declaration and report of Mark Young;
J.    Recorded statement of Terry Ritter;
K.    Photographs produced by Plaintiffs;
L.    Juvenile court petition filed by the Galveston County District Attorney's Office;
M.    Magistrate's finding of probable cause for detention of Dymond Milburn;
N.    Recorded statement of Vernon Hock; and
O.    Verification of Summary Judgment Evidence.