UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| EMILY MILBURN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-08-193 |
| | § | |
| GILBERT GOMEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

Before the Court is the defendants, Gilbert Gomez, David Roark, and Sean Stewart's motion for summary judgment (Document No. 29) and the plaintiff, Emily Milburn, Individually and as next friend of Dymond Larae Milburn's response in opposition (Document No. 32). The Court has examined the motion and response on file, along with the exhibits and appendices, and determines that the motion should be granted.

### II.   FACTUAL BACKGROUND[1]

On or about August 22, 2006, officers from the Galveston Police Department ("GPD") were dispatched to 24th Street and Avenue P 1/2, in Galveston, Texas, based on a complaint from a citizen that three (3) female Caucasian prostitutes were engaged in soliciting customers in the area. Two (2) males, one Caucasian and another African-American, were also present and "dealing" drugs near the same area or location. At the time, the defendant, Sergeant Gilbert Gomez was commander of the Narcotics Division of the GPD and was charged with the responsibility of investigating vice, drugs, gambling and prostitution.

---

[1] The facts related are taken in essentials from the plaintiff's pleadings and are not contested, otherwise, by the defendants.

Sergeant Gomez and fellow officers Roark, Popovich and Stewart, responded to the dispatch and proceeded to the 24th Street location. The GPD officers were in plain clothes and arrived in an unmarked [van] vehicle. Officer Stewart was first to exit the van and proceeded to approach the plaintiff, Dymond Milburn, a minor. According to the plaintiff, she stepped outside the house to reset a breaker in the electrical box because the breaker had "tripped" and certain electrical outlets were inoperative. After she flipped the breaker switch, she proceeded back into her house. She was approached by the men who were running toward her. When she saw them, she ran and "jump[ed] into the bushes" in her yard and near the porch and breaker box of her house. The GPD officers approached her, accused her of being a prostitute and demanded that she come with them. She refused, claiming that she was not aware that the men were police officers. When she refused, she relates that officer Stewart slapped her face and struck her, causing injury to her neck, arm, wrist, legs and head, as officers Stewart, Roark and Popovich attempted to pull her from the bush. Both the plaintiff's minor brother and father attempted to intervene but were held back.

Officer Stewart admits that he did not observe the plaintiff engaged in any illegal activity and that her conduct, being in her own yard and walking to or from the breaker box, was legal activity. Officer Roark expressed concerns that the plaintiff might have been "stashing illegal contraband and weapons." He admits that he might have struck the plaintiff when he went into the bush to remove her. He also asserts that he was struck by the plaintiff as he proceeded to handcuff her. He asserted that the plaintiff violated the law when she fled from the breaker box into the bush.

The plaintiff was not taken to the GPD police station, but a warrant issued some time later. An investigation by Lieutenant Bryon Frankland later that evening resulted in charges of

assault of a police officer. A warrant was issued three weeks later, and the plaintiff was arrested at her school by officer Stewart.

The criminal information, filed in Juvenile Court, stated that on September 22, 2006, the plaintiff caused bodily injury to Officer Roark by striking him in the face with her hand [a Third Degree Felony] in violation of Section 22.01 of the Texas Penal Code. The case proceeded to trial on October 3, 2007, and a mistrial was declared. The plaintiff was again tried for the same offense and it, too, resulted in a mistrial on February 9, 2009. Noteworthy is the fact, no drugs were recovered at the scene.

### III.    CONTENTIONS OF THE PARTIES

The plaintiffs contend that the GPD's officers conduct on the occasion violated the constitutional rights of Dymond Milburn in that she was seized, assaulted, and was the victim of the use of excessive force and was illegally arrested and detained without reasonable and/or probable cause in violation of 42 U.S.C. §§ 1983, 1988.

The defendants deny that they violated the plaintiff's civil rights in any respect. They assert that they are entitled to qualified and official immunity and that, in fact, officer Roark was assaulted by the plaintiff. In this regard, the defendants contend that probable cause existed to arrest the plaintiff, they were authorized to use reasonable force to detain the plaintiff, they were permitted to handcuff the plaintiff, the force used was not excessive to that needed but was objectively reasonable, and, the plaintiff was not deprived of a clearly established right, but the defendants at all times acted in an objectively reasonable manner.

## IV. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant

4

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

    **B.**    <u>**Excessive Force Review Standard**</u>

The plaintiff alleges that the defendants used excessive force during her arrest in violation of her Fourth Amendment rights. The Fifth Circuit has noted that "the use of excessive force to apprehend a subject implicates the Fourth Amendment's guarantee against unreasonable seizures." *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985); *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). "To prevail on an excessive force claim, a plaintiff must establish an: '(1) injury (2) which resulted directly and only from use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ramirez v. Knoulton*, 542, F.3d 124, 128 (5th Cr. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (internal citation omitted). The alleged injury, though not required to be significant, must be more than *de minimis*. *Freeman*, 483 F.3d at 416 (citing *Glenn*, 242 F.3d 1t 314). "The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Freeman*, 483 F.3d 416 (quoting *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir. 1996)).

"[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual Fourth Amendment interests against its promotion of legitimate governmental interests." *Flores v. City of Palacios*, 381 F.3d 391, 398 - 99 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L.Ed.2d 660 (1979)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." *Ramirez*, 542 F.3d at 129 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

INSERT

### C. **Assault and Battery Review Standard**

Under Texas law, "[a] person commits an assault if he 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.'" *Glenn*, 242 F.3d at 313 (quoting TEX. PENAL CODE ANN. § 22.01 (Vernon 1993)). The elements required to plead a cause of action for battery in Texas are "(1) a harmful or offensive contact; (2) with a plaintiff's person." *Doe v. Beaumont I.S.D.*, 8 F. Supp.2d 596, 616 (E.D. Tex. 1998) (citing *Price v. Short*, 931 S.W.2d 677, 687 (Tex. App. 1996)). "Texas courts have proclaimed that a police officer is entitled to qualified immunity from intentional tort liability 'if he is acting in good faith within the course and scope of his authority, and performing discretionary functions.'" *McElroy v. U.S.*, 861 F. Supp. 585, 594 - 95 (W.D. Tex. 1994) (citing *Vasquez v. Hernandez*, 844 S.W.2d 802, 803 (Tex. App.-San Antonio 1992, writ dism'd w.o.j.); *see Bozeman v. Trevino*, 804 S.W.2d 341, 343 (Tex. App.-San Antonio 1991, no writ); *Den v. City of Dallas*, 729 S.W.2d 114, 117 (Tex. App.-Dallas 1986, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 977, 108 S. Ct. 1272, 99 L.Ed.2d 483 (1988)).

Moreover, any "activity that would otherwise subject a person to liability in tort does not constitute tortuous conduct if [the] actor is privileged [or justified] to engage in that conduct." *Garza v. U.S.*, 881 F. Supp. 1103, 1106 (citing *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988), *cert. denied*, 493 U.S. 822, 110 S. Ct. 80, 107 L.Ed.2d 46 (1989)). In other words, "a privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortuous if committed by someone not having

6

those duties." *Garza*, 881 F. Supp. at 1106. "Under Texas law, if an officer has probable cause, he is justified in using such force '[he] reasonably believes is immediately necessary to make an arrest or to prevent escape after the arrest.'" *McElroy*, 861 F. Supp. at 595 (citing TEXAS PENAL CODE ANN. § 9.51(a) (Vernon 1994)).

### D.   "Unlawful Restraint/Arrest" Review Standard

Under Texas law, liability for both false arrest and/or false imprisonment will attach when: (1) there is a willful detention of a person; (2) without his or her consent; and (3) without the authority of law. *Pete v. Metcalfe*, 8 F.3d 214, 218-219 (5th Cir. 1993) (citing *Sears, roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985)). Texas law also permits "[a]ny peace officer [to] arrest, without warrant: . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . breach of the peace,  . . . or threaten, or are about to commit some offense against the laws." Tex. Crim. Proc. Code Ann. Art. 14.03(a)(1) (West 2005); *see also Garza*, 881 F. Supp. at 1107. Thus, no action will lie against an officer for unlawful restraint, false arrest or false imprisonment where probable cause is shown to have existed, as the existence of probable cause provides the authority to arrest. *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998); *see also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest . . . and false imprisonment . . . require a showing of no probable cause.")). Further, the Texas Penal Code § 20.02(d) provides that "[i]t is no offense to detain or move another under this section when it is for the purpose of effecting a lawful arrest or detaining an individual lawfully arrested." Tex. Penal Code § 20.02(d).

V.     **ANALYSIS AND DISCUSSION**

The plaintiff's § 1983 cause of action asserts essentially three bases for relief: (a) the use of excessive force; (b) common law assault and battery; and (c) unlawful restraint. The Court will address these claims in turn.

The evidence is undisputed that the plaintiff was struck and injured during the course of the police officers attempting to remove the plaintiff from the hedge in her yard. It is also undisputed that the GPD was not on the plaintiff's property to execute a search warrant. Nor is there a factual dispute that the plaintiff did not fit the description of the female prostitutes or the drug dealers referenced by the tipster. Finally, it is undisputed that the GPD officers were acting under color of law. What remains in dispute is whether the force used by the officers on the occasion was "excessive and objectively unreasonable" under the circumstances.

The record shows that officers Roark and Stewart attempted to remove the plaintiff from the hedge. During this encounter, the plaintiff fought and resisted the officers' attempts. The plaintiff asserts that officer Stewart slapped her in the process, that she yelled for help from her family and that she did not strike or hit the officers. Officer Stewart asserts that he announced to the plaintiff [yelled] that he was a police officer and when he did, the plaintiff looked at him, screamed and ran into the hedge. He states that the plaintiff refused to come out of the hedge. He further states that officer Roark grabbed one of the plaintiff's arms and the plaintiff struck him with the other. Finally, officer Stewart described the plaintiff's conduct as hitting and kicking the officers.

The GPD had been notified that drug dealing was occurring near the plaintiff's house and that prostitutes were also in the area. Hence, the officers were investigating allegations of felonious conduct. The Court is of the opinion that the actions of the plaintiff, although

8

consistent with lawful conduct, evolved into suspicious conduct when the plaintiff fled into the hedge. An officer investigating reported crimes may detain a person at or near the scene of the alleged crime(s) in order to continue or complete an investigation. *See Terry v. Ohio*, 392 U.S.1 (1968). And, when a person seeks to evade or avoid that contact, an officer may pursue that person to determine whether a connection exists between the fleeing person and the reported crime(s). In this context, the GPD officers were justified in removing the plaintiff from the hedge. And, in doing so to use such force as was appropriate to remove the plaintiff from the hedge. There is no evidence that the force used was unnecessary or excessive and, therefore, exceeded that necessary to remove the plaintiff. And, because it is undisputed that the plaintiff became hysterical, temporarily handcuffing her was also reasonable. The Court is of the opinion that the injuries suffered, although more than *de minimus*, do not support a finding that excessive force was exercised in removing the plaintiff from the hedge. *See Freeman*, 483 F.3d at 416. Therefore, the plaintiff's excessive force claim fails.

Likewise, the plaintiff's assault and battery contention fails. The status of the law permits harmful contact by an officer in a circumstance where he is acting in good faith and within the course and scope of his authority. *See McElroy*, 861 F.Supp. at 594-95. Hence, contact that is being exercised and otherwise would constitute a tort if committed by someone other than a peace officer, is a privilege when exercised according to law. *See Hinojosa*, 834 F.2d at 1231. In other words, when a person is sought to be detained and that person resists that detention, the actions of the peace officer to restrain the person does not constitute an assault and battery unless the force used is excessive. *See Garza*, 881 F.Supp. at 1106. In the case at bar, the Court has determined that the force used by the officers to subdue and restrain the plaintiff was not excessive and therefore by consequence did not constitute an assault and battery.

Finally, the plaintiff contends that she was the subject of a false arrest on the occasion of the incident and later when she was arrested on charges of assaulting officer Roark. The question for resolution in both instances is whether the arrest/detention was without authority of law. *See Sorenson*, 134 F.3d at 328.

Concerning the August 22 incident, the plaintiff appears to argue that the plaintiff was arrested and without a warrant. The Court disagrees. While the plaintiff was restrained in handcuffs for a period, there is no evidence that the restraint extended beyond the time necessary to sort out the reason(s) for her conduct; *i.e.,* fleeing into the hedge. As stated heretofore, a warrant was unnecessary to effect detention of the plaintiff. Moreover, the plaintiff's conduct, yelling and the exchange of words [allegedly cursing] while fighting against her removal from the hedge, constitute conduct that supported restraint that order might be restored. The evidence shows that even in the circumstance, officer Roark was able to place his handcuffs on only one of the plaintiff's arms and that shortly after removing the plaintiff from the hedge, she was released to her father. Therefore, the Court is of the opinion that the plaintiff was not placed under arrest on August 22.

On or about September 15, 2006, the plaintiff was arrested at her school for charges that arose out of the August 22, incident. The plaintiff asserts that the arrest was warrantless, illegal and deprived the plaintiff of her constitutional rights to be free from unreasonable seizure and detention. Texas law permits a person to be arrested/detained without a warrant where the officer has reason to believe probable cause that an individual has committed an offense. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). In the case at bar, a formal complaint had been filed charging the plaintiff with the felony offense of assaulting a peace officer. That formal complaint constituted a sufficient basis to arrest the plaintiff even though a

formal arrest warrant had not been prepared and issued.  *See Tex. Crim. Proc. Code Ann.*, art. 14.03(a)(1) (West 2005).  Therefore, the Court concludes that the arrest of the plaintiff on September 15 did not violate federal or state law.

## VI. **CONCLUSION**

Based on the foregoing analysis and discussion, the Court concludes that the plaintiff's claims are unmeritorious and that the defendants' motion for summary judgment should be GRANTED.

It is so ORDERED.

SIGNED at Houston, Texas this 17th day of November, 2010.

_____
Kenneth M. Hoyt
United States District Judge